## Commonwealth v. Mattocks

*Rudolph Van der Hiel, District Attorney*, for Commonwealth.

*Thomas A. Walrath*, for defendant.

KEMP, *P. J.*, December 12, 1975. —

## HISTORY OF THE CASE

Defendant was charged with a violation of the Beaver Trapping Regulations promulgated by the Pennsylvania Game Commission pursuant to section 601 of The Game Law of June 3, 1937, P.L. 1225, as amended, 34 P.S. §1311.601. Specifically, defendant was accused by Game Protector John K. Weaver of placing or making use of a guide stick for his beaver trap which was in excess of two feet in length. The case was heard on April 8, 1975, before District Magistrate Eleanor Trask of Mansfield, who convicted defendant and imposed a fine of $50 pursuant to section 610 of the 1937 Game Law, 34 P.S. §1311.610. An appeal was taken by defendant from his summary conviction, and we heard testimony de novo on October 22, 1975. From that testimony, we find the following

## FACTS

Shortly after midnight on March 16, 1975, Deputy Game Protector Walter Ebert was inspect-

ing beaver traps in the eastern portion of Sullivan Township, which abuts neighboring Bradford County, when he observed a conibair trap bearing a tag with the name of defendant set in a channel several feet upstream from a beaver dam. A few inches downstream from the trap was a guide stick placed in such a way as to cause the beaver coming upstream to dive below the surface of the water and enter the trap. The guide stick, produced in court as Commonwealth's exhibit no. 1, was a forked branch with two prongs, one 34 inches long and the other 86 inches long, both measured from the base of the branch and not the fork. The channel itself was quite narrow and shallow, being only about 26 inches wide and ten inches deep.

After checking a few more traps in the immediate vicinity, Deputy Ebert returned to his vehicle and radioed Game Protector Weaver, who was in the same area. Within one hour, Mr. Weaver arrived on the scene, made diagrams of what Mr. Ebert had found and confiscated the trap. In dismantling the trap set, Mr. Weaver found the butt end of the guide stick wedged into a notch cut into the bank alongside the channel and resting on top of part of the chain leading down to the trap.

## ISSUE

Does the use by defendant of a guide stick of native material greater than two feet in length, in connection with the setting of a beaver trap, violate the regulations promulgated by the Pennsylvania Game Commission pursuant to its authority under the statute?

## DISCUSSION

The resolution of this issue depends entirely on the interpretation of the language contained in the

Beaver Trapping Regulations promulgated by the Pennsylvania Game Commission in the Pennsylvania Bulletin of April 29, 1972, 2 Pa.B. 772-73, which read, in pertinent part, as follows:

"Pursuant to the authority of §601 of the Act of June 3, 1937, P.L. 1225, as amended June 24, 1939, P.L. . . . 519 (P.S. 34 §§1311.601 and 604), the Game Commission proposes to amend former rules and regulations adopted by the Commission pertaining to beaver trapping to read as follows:

" . . .

"B. In addition to the restrictions as fixed by law for taking of beavers during any open season, the following added special regulations shall apply and it shall be unlawful to:

" . . .

"4. Place or make use of any manmade materials or products to direct the travel of beaver, or to construct or make use of any type of fencing whatsoever. Only raw native materials less than two feet in total length may be placed as guide sticks . . ."

These regulations were adopted by an order dated June 1, 1972 and published by the Game Commission in the Pennsylvania Bulletin, 2 Pa.B. 1074-75, June 24, 1972.

At the outset, it would appear that the charge against defendant is based on the second sentence of paragraph B4, as quoted above. It is not absolutely clear from the reading of that sentence that the "guide sticks" are the same as the "products to direct the travel of beaver" mentioned in the first sentence. Within the context of these regulations, however, it is obvious that the quoted phrase from the first sentence defines and explains the meaning of the term "guide sticks" in the second sentence. It is frequently necessary to read a statute or a regula-

tion in its entirety in order to savor the full meaning of its prohibition, and this regulation is no exception.

Counsel for defendant has advanced two arguments construing the regulation in such a way as not to prohibit the act committed by his client. The first is that the second sentence of the regulation does not specifically prohibit the use of guide sticks greater than two feet in length but only allows those less than that length. We consider the former proposition to be a corollary of the latter, and the plain meaning of the second sentence is to prohibit the use of guide sticks longer than two feet.

Counsel also argues that because the prohibition of the second sentence is the *placing* of guide sticks, the mere *use* of such sticks which may have been in place previously is not an act prohibited by the regulation. There are two obvious flaws in this argument, one of construction and one of fact. First, we deem it necessary again to read the regulation in its entirety to discern its meaning, and the first sentence prohibits not only the placement but also the use of man-made materials as guides. We believe that the prohibition of the placement of native guide sticks greater than two feet in length necessarily includes a prohibition on the use of such guide sticks. To construe the regulation otherwise would encourage collusion between placers and users and frustrate the entire purpose of the regulation, which is to restrict trapping methods sufficiently to assure citizens of the Commonwealth a continuing population of beaver.

Second, it is obvious from the facts of this case that defendant not only used the guide stick in question but also took some part in placing that stick in the position where it was discovered by

Deputy Ebert. Both Mr. Ebert and Mr. Weaver testified that the chain fastened to the trap was wedged underneath the butt end of the guide stick. It is obvious that, in placing the trap, defendant at least had to lift the butt end of the guide stick in order to place his chain in such a position. Even under the very narrow construction advanced by his counsel, his activity in doing so is sufficient to place him squarely within the prohibition of the regulation.

## ORDER

And now, December 12, 1975, in accordance with the foregoing opinion, it is ordered, adjudged and decreed that the finding of guilt and imposition of fine and costs by the district magistrate be, and the same hereby are, sustained, and the appeal of defendant dismissed.